## JOHNSON *vs.* THE STATE.

[INDICTMENT FOR LARCENY OF A HORSE.]

1. *Oath of jury; what recital shows that jury was not properly sworn.*—The recital in the record, as to the oath of the jury, that "thereupon came a jury, to-wit: E. B. R., and eleven others, good and lawful men, who being elected, tried and sworn well and truly to try the issue joined between the State of Alabama and the defendant, on their oaths do say," &c., shows that the proper oath was not administered to the jury.

2. *Larceny; what competent evidence on trial of.*—On the trial of an indictment for the larceny of a horse, which grazed in the day and regularly returned to his stall at night, proof that the horse failed to return to his stall as usual, though slight evidence, is admissible, in connection with proof tracing the horse into defendant's possession, to show a taking by him. But the testimony of a witness to such facts, whose knowledge of them is derived solely from what his wife and family reported to him, is mere hearsay.

3. *Confession; when proper evidence.*—The evidence in this case shows that the defendant's confessions were voluntarily made; they were therefore properly admitted against him.

APPEAL from City Court of Montgomery.
Tried before Hon. JOHN D. CUNNINGHAM.

Appellant was indicted, tried and convicted for the larceny of a horse, the property of John Murray.

On the trial, Murray, in his direct examination, testified that the horse was in the habit of grazing near his stable and coming up regularly every night; that in the month of August, 1870, the horse was missing, and "continued missing, and did not come up at night for some eight days;" that a few days after this he went to Benton, and there met a constable who pointed out defendant, who was then in jail, to witness, saying "there is the man I saw have your horse." After this, witness talked with defendant, who admitted that he had the horse and brought him to Benton, but said that he got him from some gipsies, who had robbed him. Afterwards, coming on the cars to Montgomery, defendant told witness that he did take the horse in the city

of Montgomery and carry him to Benton. The witness further testified, that "these admissions were not extorted by any hope or fear, excited by witness or any one he knew of." Witness did not see the horse at Benton, and never saw it in defendant's possession, but while at Benton he learned that the horse was a few miles off, and 'dispatched a man for it, who delivered the horse to witness in Montgomery.

On cross-examination, Murray testified that at the time the horse was stolen or missing, witness was confined to his bed by sickness, and knew nothing about the horse being missing except what his wife and members of his family told him.

"The evidence of the witness as to what his wife and family told him while sick, as to the horse being missing, was objected to by defendant's counsel when offered, but the court decided to leave it subject to a motion to exclude it before the jury retired, and defendant excepted." The above is substantially all the evidence offered; and "thereupon the State rested the case, and defendant's counsel moved separately to exclude from the jury all the testimony of witness as to what his wife had told him, and also what the constable told him. The court permitted the testimony to go to the jury for what it was worth in connection with the other evidence of the witness, and defendant duly excepted."

The defendant offered a witness who testified that about the time the horse was stolen there were a company of gipsies in the place, and that defendant was seen one night following them, and accused them of having robbed him, but he did not overtake them, and returned in the direction of their camp near Murray's house,

The judgment-entry, so far as it relates to the oath administered to the jury, is as follows: "Thereupon came a jury, to-wit: E. B. Randolph, and eleven others, good and lawful men, who being elected, tried and sworn well and truly to try the issue joined between the State of Alabama and the defendant, upon their oaths do say," &c.

Numerous errors were assigned in regard to the overrul-

ing of a motion in arrest of judgment, and the refusal to give charges, but the view which the court took of the case renders it unnecessary to notice any but the first and second assignments, which were as follows:

1st. The court erred in not excluding the testimony objected to.

2d. The jury was not properly sworn.

J. FALKNER, for appellant.—The testimony of Murray as to the horse being missing was entirely hearsay, as the witness only knew what his wife and family had told him. This was hearsay, and was not the best evidence. His wife was a competent witness, but was not introduced, as she should have been.—Greenl. Ev. § 82, p. 97; *Commonwealth v. Kinney*, 12 Met. 235.

When evidence is offered which is *prima facie* incompetent, it is the duty of the court to exclude it, unless the party offering it proposes to show by other evidence its relevancy and legality. This was not done in this case. *Bilbury's Adm'r v. Mobley*, 21 Ala. 271; *Ashley's Adm'r v. Robinson*, 29 Ala. 112; *Bush & Co. v. Jackson*, 24 Ala. 273.

It is always improper to allow illegal evidence to go to the jury, when there is no prospect of its being made legal, even if it should be afterwards excluded, as it is likely to make an impression on the minds of the jury which can not be entirely effaced, as in this case; for even if the judge afterwards excludes it, every practitioner knows that it has its effect to some extent on the minds of jurors.

The defendant was in jail when the witness went to Benton and when approached by witness and constable, and did not know what his rights were. There was no evidence that the horse had been stolen.—See *Swinney & Lawson v. State*, 20 Ala. 65.

J. W. A. SANFORD, Attorney-General, *contra*.—A horse running loose in the country, or going astray, may be the subject of larceny.—*Murray v. The State*, 18 Ala. 730, and authorities cited.

Johnson v. The State.

The confessions of the prisoner were voluntarily made, and therefore properly admitted.

The conversation of the wife with the husband in regard to the disappearance of the horse, merely gave him information that put him on inquiry for the horse. It did not charge the prisoner with larceny. At most, its admission was irregular, but not injurious to the accused. Again, the conversation merely furnished an inducement for the search. The conversation of the constable only pointed out the accused.

It has been decided at the present term of this court that when the case was fully sustained without irrelevant testimony, that its admission would not work a reversal.

PETERS, J.—This is an appeal from a judgment of conviction in the city court of Montgomery, in a criminal case, upon a charge of horse stealing. The accused, Andrew Johnson, was found guilty of grand larceny, and sentenced to perform hard labor for the county of Montgomery for the term of three years, beginning on the 17th day of July, 1871. From this conviction and judgment he appeals to this court.

There is a bill of exceptions in the record, and an assignment of numerous errors; but in such an appeal, it is the duty of this court to examine the whole record, "and render such judgment on the record as the law demands."—Rev. Code, § 4314; *Brazier v. State,* 44 Ala. 387. In doing this, the court will be careful to ascertain that the accused has not been "deprived of his life, liberty or property *but* by due process of law."—Const. Ala. Art. I, sec. 8; Const. U. S. Art. V. In a criminal prosecution, "due process of law" means a procedure according to established forms. The record in the cause must show that those forms have been complied with, because the record is the only proof of what has been done in the court below.— Pasch. Anno. Const. U. S. p. 258, *et seq.,* and cases there cited; Rev. Code, § 767, cl. 9; 2 Burr. Law Dict. p. 386, *Record;* 3 Bla. Com. 24, Cooley's ed. 1871. This record can not be contradicted. It is to be taken as the whole

truth of the matter upon which it speaks.—*Deslonde &
James v. Darrington's Heirs*, 29 Ala. 92; *Beverly v. Ste-
phens*, 17 Ala. 701. The record in this case shows by its
recitals that the jury were improperly and illegally sworn.
The recital is in these words: "Thereupon came the jury,
to-wit, E. B. Randolph and eleven others, good and lawful
men, who being elected, tried, and sworn *to well and truly
try the issue joined* between the State of Alabama and the
defendant, on their oaths do say," &c. The "oaths" upon
which the verdict was based was evidently that set out in
the record. The court can not presume any other, because
this would contradict the record. The "oath" thus recited
is not the oath required by the statute. The statutory
oath imposes upon the jury a most solemn responsibility
"well and truly" to "try all issues submitted" to them, but
they must also "true verdict render *according to the evi-
dence*."—Rev. Code, § 4092; 4 Bla. Com. 355. Under the
former oath the jury are not bound by the evidence; under
the latter they are. A trial so conducted is erroneous.—
*Joe Johnson v. State*, at present term. Such distinctions
may sound to uncultivated ears and minds, impatient of a
nice sense of legal certainty, as a little hypercritical; but a
sterner logic, and a reason that is determined to be con-
trolled by the legislative will, have always acknowledged
their importance. *Via trita est tutissima.*—10 Coke, 142;
5 Pet. 223; 4 Maule & S. 168. And this is the rule, espe-
cially when life and liberty are concerned. Where the
statute is peremptory, as in this case, if the courts can be
permitted to depart from its requirements at all, there is
no limit to their peregrinations. A little carelessness, now
and then, in the clerk who enters the minute of the judg-
ment and the judgment itself, will soon make a new code,
or such a judicial jumble as shall defy the law itself.—
1 Tidd Pr. 47, *et seq.;* 3 Chitt. Gen. Pr. 53–56. This cer-
tainty, or nicety, if it should be so called, is no novelty to
our law. In criminal cases it has always been insisted on
by the ablest judges. On a case before Chief Justice Tin-
dal, the accused was indicted for stealing "three eggs of
the value of two pence;" he quashed the indictment, be-

cause it was not stated what kind of eggs they were. For all that appeared in the record the eggs might be adder's eggs, or other eggs which could not be the subject of a larceny.—*R. v. Cox*, 1 Car. & K. 494; 1 Arch. Cr. Pl. 88, *et seq.*

For the error above pointed out the judgment must be reversed and remanded.

The other assignments of error hardly need to be discussed, as those which are founded on the action of the court in refusing to arrest the judgment are not likely to occur a second time.

The fact that the horse alleged to have been stolen failed to return at night to his stable, is evidence, however slight, that something had occurred to him which had occasioned this change in his habits. If the horse was afterwards found in the possession of the defendant, it was proof in that connection that he had been taken by the defendant, and taken in the county of Montgomery. For this purpose it was competent. But it could only be proved in the proper way; by a witness who knew the fact. It could not be proven by the declarations of such witness. The declarations of the wife of the prosecutor and of his family were improperly admitted. They were mere hearsay.— 1 Greenl. Ev. §§ 99, 100.

The confessions of the accused were wholly voluntary. There was no inducement held out to him to make them. They were properly admitted.—*Regina v. Baldry*, 2 Lead. Cr. Ca. 164; 1 Greenl. §§ 219, 220.

The judgment of the court below is reversed, and the cause remanded for a new trial. And the defendant, said Andrew Johnson, will be held to answer the indictment against him until discharged by due course of law.